

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AXB
F. #2022R00162

*610 Federal Plaza*
*Central Islip, New York 11722*

March 18, 2024

By ECF

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Enri Cela
                  Criminal Docket No. 23-170 (GRB)

Dear Judge Brown:

      The government respectfully submits this letter in connection with the sentencing of defendant Enri Cela in the above-captioned matter. As set forth in the Presentence Investigation Report ("PSR"), the advisory Guidelines range is 0 to 6 months' imprisonment. (PSR ¶ 63). For the reasons that follow, the government respectfully joins in the recommendation of the U.S. Probation Department ("Probation") that a two-year term of probation, with special conditions of release, would be sufficient but not greater than necessary to achieve the goals of sentencing in this case.

    I.    Background

      In early 2022, in response to reports implicating Cela—a barred attorney in New York State—in drug-dealing activity, the Drug Enforcement Administration ("DEA") began an investigation. (PSR ¶ 4). On April 10, 2022, as part of that investigation, agents executed a traffic stop on Cela's vehicle; a consensual search revealed $4,600 in small bills and a quantity of marijuana. (Id. ¶ 5). Cela told the agents he was not practicing law at that time but had previously been paid in cash for performing legal research. (Id.). The following day, abandoned outside Cela's house, agents discovered several empty vacuum-sealed bags bearing markings indicating they had once contained marijuana. (Id. ¶ 6).

      On April 26, 2022, pursuant to a judicially authorized warrant, agents searched Cela's residence for evidence of drug trafficking crimes. (PSR ¶ 7). That search revealed more than $20,000 in cash; more than 5 kilograms of marijuana; a quantity of loose pills, including about a dozen oxycodone pills in an unlabeled bottle; and various distribution paraphernalia, including a bag-sealing device. (Id.). During his encounter with the agents, Cela made statements, including: (i) inquiring whether agents did not have "more important things to do" than execute the warrant

at his home; (ii) claiming that recreational marijuana use had been legalized in New York; and (iii) claiming that the seized cash consisted of gifts and employment income. (Id.). Pursuant to the warrant, the agents also seized two of Cela's cellphones, the contents of which cast serious doubt on the veracity of his statements to law enforcement. (Id. ¶¶ 8, 10).

For example, in a March 29, 2021, text message conversation, Cela described his efforts to locate and punish someone who owed him a debt. In that conversation, Cela stated that the individual "decided to pocket 22k worth of credit and move somewhere in florida." Cela stated that he had inveigled a hacker to track the individual so Cela could "show up to where he at [in] florida and violate . . . him." Cela stated his intention to "get an airbnb that's like very secluded" where he could "[b]ring him" and "[p]ut a . . . gun to his head and smash in his knee caps" so the individual would "pay up." In a separate conversation with multiple individuals that same day, Cela stated he was traveling to Florida to "look at condos for sale," which he stated was an "[a]libi." One member of the conversation wished Cela "good luck with the manhunt," to which Cela reiterated that he was not "goin lookin on foot," and had instead enlisted a "hacker" to track the individual. Cela stated he could "get a pistol over there np [no problem]" and that he would not use "a gun that's licensed or registered to [him]" to "violate" the individual.

Excerpts from Cela's social media activity revealed that he openly described himself as a "lawyer by day and weed man by night" and explicitly stated that his drug business was "[m]ainly wholesale but i retail a little bit too." In that regard, Cela was equally candid about the financial motivation behind his conduct. In a June 3, 2021 conversation, he explained that:

> I mean i have a lot of friends who work in the DA's offices and they all tell me the same thing, its not being prosecuted. I had the connections and the clientele so i figured why not make a lot of money basically risk free . . .
>
> There's a stigma around weed right [n]ow [because] its [not] fully legal but the same thing existed with alcohol when it was illegal . . .
>
> Fully legal meaning federally because its already fully legal in NY and like 15+ other states.

On April 18, 2023, a grand jury returned a two-count indictment charging Cela with violations of the Controlled Substances Act. (ECF:1). On September 8, 2023, he appeared before United States Magistrate Judge Steven L. Tiscione and pled guilty to possessing marijuana with intent to distribute it, in violation of 21 U.S.C. § 841. (PSR ¶ 1).

II.   Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---:|
| Base Offense Level (§ 2D1.1(a)(5), (c)(14)) | 12 |
| Less:  Zero Point Offender Credit (§ 4C1.1) | -2 |
| Less:  Acceptance of Responsibility (§ 3E1.1(a), (b)) | <u>-2</u> |

2

   Total:<span style="float:right">__8__</span>

(PSR ¶¶ 16-25).

   Based upon a total offense level of 8 and Criminal History Category I, the applicable Guidelines range is 0 to 6 months' imprisonment.  (PSR ¶¶ 28, 63).

 III. <u>Argument</u>

   Any fair application of § 3553(a) compels the conclusion that Cela's conduct was serious—particularly given his history and characteristics—and deserves punishment under the law.  In particular, the governing statute requires the Court to consider "the nature and circumstances of the offense" and the need for the sentence "to reflect the seriousness of" Cela's conduct.  18 U.S.C. § 3553(a)(1), (2)(A).  The evidence outlined above reflects not only Cela's involvement in "wholesale" marijuana distribution, but also a related inclination toward violent rhetoric that is plainly repugnant, especially when uttered by a member of the bar.

   Along those lines, the statute also requires the Court to consider "the history and characteristics of the defendant."  <u>Id.</u> § 3553(a)(1).  And this defendant's legal training makes his conduct especially egregious.  For starters, despite having only been barred for about five months when the offense of conviction began, the defendant was unusually arrogant about his understanding of the law.  He questioned the propriety of the DEA's execution of a search warrant at his residence, telling trained federal drug agents that recreational marijuana use had been legalized and questioning why they did not have "more important things to do" than investigate him.  He was cavalier based on anecdotal evidence from other, equally inexperienced attorneys (including, no doubt, his co-conspirator) that local prosecutors' offices were not enforcing the drug laws, which led him to describe his drug-dealing business as "basically risk free."

   This brashness was misplaced for at least two reasons.  First, regardless of then-recent changes in New York's drug laws, Cela's alleged conduct was <u>not</u> legal under the state's regime. Although the Marihuana Regulation & Taxation Act made small quantities of marijuana lawful to possess by adults at the state level, <u>see</u> N.Y. PEN. L. § 222.05(1)(a), it plainly did not legalize the sale or possession for sale of marijuana by unlicensed individuals, <u>see id.</u> § 222.45 (making it a crime to sell marijuana in any quantity[1]); § 222.05(1)(b) (legalizing the transfer "without compensation" of up to three ounces of marijuana).  Nor did it legalize the possession by adults of more than three ounces of marijuana.[2]  <u>See id.</u> §§ 222.25 <u>et seq.</u> (setting forth various criminal offenses arising from the possession and sale of marijuana).  Second, as Cela well knew, at all times relevant to the indictment, marijuana was a Schedule I controlled substance, the possession and use of which in all forms was illegal under federal law.  Indeed, Cela explicitly stated in June 2021 that marijuana was not "fully legal" because it was still federally proscribed.

---

  [1] Section 222.20 of the New York Penal Law makes appropriate licensure a defense to a state level marijuana offense.

  [2] Under amended New York law, a person may lawfully possess up to five pounds of marijuana in their private residence for personal use.  <u>See</u> N.Y. PEN. L. 222.15(5).

In other words, Cela was fully aware that his actions were criminal and simply found them more lucrative than his lawful job prospects. In one online conversation, for example, he lamented that despite graduating in the top 25% of his law school class, he was unable to secure a high-paying legal position. "Meanwhile," he explained, "ppl at the bottom of my class whos parents and fanily [sic] were lawyers were already guaranteed jobs making 200k coming out of school." Through his drug business he claimed to have "[a]t least doubled what they made last year."

Finally, the Court must also consider the need for its sentence "to promote respect for the law" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B). And while, ideally, criminal sanctions should not be required to instill in a licensed attorney a healthy respect for the law, the discussion above makes clear that Cela is uniquely situated. To be sure, although he has no prior convictions, the PSR makes clear that a prior arrest for marijuana possession did not have the desired deterrent effect. (PSR ¶ 31). Despite claiming in a law school application that the incident was "one of the most embarrassing and unfortunate nights of [his] life," after which Cela claimed to be "extra careful when it comes to [his] surroundings" and the people with whom he associated (id.), the episode evidently did not deter him from continuing to place his law license in jeopardy in substantially the same way years later.[3] In this regard, the Court must also consider the obvious need to send a message of deterrence to would-be members of the bar whose warped cost-benefit analyses might similarly lead them to criminality and bring disrepute to the profession.

At the same time, however, the PSR indicates that, following his arrest and guilty plea in this case, Cela has maintained gainful employment as an attorney. (PSR ¶ 51). Indeed, Probation has indicated that its recommended sentence accounts for the possible negative impact on Cela's ability to maintain his status at bar as a result of the instant offense. (Sent'g Rec. 2-3). Moreover, Cela has evidently remained compliant with the conditions of his release, including, importantly, refraining from any illegal drug use—a circumstance that led Probation to recommend suspending the applicable statutory drug testing requirement. (Id. at 2). Under these circumstances, and in view of the advisory Guidelines range expressly contemplating a non-carceral sentence, the government joins in Probation's sentencing recommendation.

---

[3] The PSR's recounting of this incident is also notable because Cela again sought to excuse his conduct, at least in part, by claiming that the incident occurred "prior to the decriminalization of marijuana." (PSR ¶ 31).

4

IV.	Conclusion

Based on the foregoing, the government respectfully submits that a two-year probationary sentence is reasonable and appropriate in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By:	/s/ Anthony Bagnuola
Anthony Bagnuola
Assistant U.S. Attorney
(631) 715-7849

cc:	Clerk of the Court (GRB) (by ECF and email)
U.S. Probation Officer Gregory Giblin (by email)
Alain V. Massena, Esq., Counsel for the Defendant (by ECF and email)

5